IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |  |
|---|---|---|
| FRANK M. NANCE | ) | Case No. 4:06CV00058 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **MEMORANDUM OPINION** |
| v. | ) |  |
|  | ) |  |
| QUICKRETE CO., | ) | By: Jackson L. Kiser |
|  | ) | Senior United States District Judge |
| Defendants. | ) |  |

Before me now is Defendant Quikrete Co.'s ("Quikrete") Fed. R. Civ. P. 56 Motion for Summary Judgment against Plaintiff Frank M. Nance ("Nance"). The Defendant has briefed the issue and the Plaintiff, a *pro se* litigant, responded. I find that oral argument is not necessary in this case. The motion is therefore ripe for decision. For the reasons stated herein, Defendant's Motion for Summary Judgment will be **GRANTED.**

**I.     LEGAL STANDARD**

*A.     Summary Judgment*

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict

1

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II.     STATEMENT OF THE FACTS

In accordance with the rules of law governing a summary judgment motion, I will recount the facts in the light most favorable to the Plaintiff. Plaintiff Nance drove trucks delivering concrete products for Defendant Quikrete from 1992 until October 15, 2005. Quikrete discharged him from that position ten months after Nance presented a doctor's note detailing a medical condition which limited Nance's working time to ten or eleven hours per day. Customer demand determines Quikrete's delivery schedule. Quikrete maintains that its drivers must be available to work up to fourteen hours per day and generally make three deliveries per day.[1] The Plaintiff's limitation allowed him to make only two deliveries per day. In the Plaintiff's deposition, he stated that all truck driving jobs in his community require the driver to work

---

[1] Department of Transportation regulations allow a truck driver to be on-duty for fourteen consecutive hours after being off duty for ten hours. However, a driver may only spend eleven of the fourteen on-duty hours driving. 49 CFR 395.1

2

fourteen hour days.

Nance first presented his medical limitation to Quikrete when he furnished a note written by his cardiologist, Dr. Craig Turner, in December of 2004. The note stated that Nance could not work more than ten to eleven hours per day "due to health problems." In his deposition the Plaintiff said that he requested the note from his doctor because he suffered from fatigue. The Plaintiff could not say for sure why he experienced fatigue only that he had better stamina prior to his heart surgery in February, 2004. Nance has also had periodic bouts of depression since 1996 and could not rule this out as a cause for his fatigue. According to his deposition testimony, the Plaintiff suffers no other limitations from his condition other than not being able to work more than ten or eleven hours per day as a truck driver. Since this layoff, Nance has received Social Security Disability benefits.

At the time of the Plaintiff's lay-off, Quikrete employed ten or eleven other drivers who could work the required number of hours. Quikrete's business is seasonal and it usually employs eleven or twelve drivers from March through October. In the fall of 2005, Quikrete reduced its number of drivers from eleven to six. Nance was one of those laid off despite having the second highest seniority. Quikrete initially promised to find a way to keep Nance working, and did employ him for ten months under the conditions requested by his doctor.

Quikrete has a policy prohibiting discrimination based on disability which requires employees to report concerns to Quikrete management. Nance reported that he called the company to complain twice and received no response. Nance did not communicate to Quikrete management that he felt his layoff was based on disability discrimination. In his deposition, the Plaintiff was asked "[W]hat disabilities do you think the company discriminated against you

3

based on?" He answered, "Like I said before, they didn't base it on anything that I know of. . . except I was just terminated because I couldn't work 14 hours."

## III. PROCEDURAL HISTORY

The Plaintiff filed his Complaint alleging discrimination under the Americans with Disabilities Act ("ADA") on August 21, 2006 within 90 days after his complaint with the Equal Employment Opportunity Commission was investigated and dismissed. The Defendant filed this Motion for Summary Judgment on May 1, 2007.

The Plaintiff filed a response on May 29, 2007. While the Plaintiff's response was due on May 18, 2007, a *Roseboro* notice was not sent to the Plaintiff until May 24, 2007.[2] Under the terms of the Pre-Trial Order, failure to respond to a motion within fourteen days of service of the movant's brief allow me to deem the motion as well-taken. Given that a *pro se* litigant's pleadings are entitled to liberal construction and that the Plaintiff did not receive a *Roseboro* notice until after the time period expired, but still responded within the time frame given in the *Roseboro* notice, I will take the Plaintiff's response into account.

## IV. DISCUSSION

I find that summary judgment in favor of the Defendant is appropriate for two reasons: first, the Plaintiff's impairment is not a disability under the ADA; second, the Plaintiff is not a "qualified individual with a disability" under the ADA. I find that no genuine issue exists as to any material fact. It is undisputed that the Plaintiff simply can no longer fulfill the functions of

---

[2]A *Roseboro* notice informs a *pro se* litigant that a motion for summary judgment has been filed against him and advises him of his right to file affidavits before a court considers the summary disposition of the case. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

4

being a truck driver at Quikrete, and the ADA does not provide a remedy for him.

### A. Proving an ADA Claim Generally

Under the ADA, a plaintiff may prove his wrongful termination claim in one of two ways. *Shiflett v. GE Fanuc Automation Corp.*, 960 F. Supp. 1022, 1028 (W.D. Va. 1997). The first is the *McDonnell Douglas* test, under which the plaintiff establishes a *prima facie* case of discrimination by showing that 1) he is protected by the ADA; 2) that he suffered an adverse event; 3) that his job performance at the time of the event met the legitimate expectations of the employer; 4) and the circumstances of the adverse event give rise to a reasonable inference of unlawful discrimination. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff succeeds in making a *prima facie* case, the defendant can rebut with a legitimate nondiscriminatory reason for the plaintiff's termination. *Lockheed Martin*, 354 F.3d at 285. The plaintiff then has the burden of rebutting the defendant's explanation by showing by a preponderance of the evidence that it is a mere pretext. *Id*.

The second method of proving discrimination applies where an employer admits that the disability played a role in the employee's discharge. *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir. 1994). Under this method, the plaintiff must show that 1) he suffers a disability within the meaning of the ADA; 2) that he is otherwise qualified, 3) and that he suffered an adverse employment action on the basis of disability in violation of the ADA. *Id*. Under either system of proof, the plaintiff has the burden to persuade the court that the defendant intentionally discriminated against the plaintiff. *Williams v. Staples, Inc.*, 372 F.3d 662, 666 (4th Cir. 2004) (*citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

5

*B.     Plaintiff Is Not Disabled under the ADA.*

The Defendant contends that the Plaintiff's condition does not qualify as a disability under the ADA because he does not suffer an impairment which "substantially limits" one or more of his "major life activities." 42 USC §12102(2). I can find no genuine issue of material fact to support the idea that Nance's fatigue substantially limits his major life activities, and therefore summary judgment is appropriate.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* Courts should strictly interpret the terms "substantially limits" and "major life activity." *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 464 (4th Cir. 2005) (*citing Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 197 (2002)). To be disabled under the ADA requires an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota*, 534 U.S. 184, 197. Examples of major life activities include tasks such as caring for oneself, performing manual tasks, walking, seeing, hearing, etc. 29 C.F.R. 16320.2(j); *Papproth v. E.I. DuPont De Nemours & Co.*, 359 F. Supp. 2d 525, 528 (W.D. Va. 2005). At deposition, Nance admitted that he could perform everyday life activities such as those listed above. His only limitation is being able to drive a truck more than eleven hours per day. This is not the sort of activity that is of central importance to most people's daily lives.

It is true that in some cases working may qualify as a "major life activity." *Taylor*, 429 F.3d at 464. However, "[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Id.* (*quoting Sutton v. United Air Lines*, 527 U.S. 471, 492 (1999)); *see also Toyota*, 534

6

U.S. at 200. In *Taylor*, the court found that while the plaintiff's inability to lift more than thirty pounds disqualified him from his courier job at Federal Express, he could still perform a broad range of daily activities and find work in a broad range of jobs and therefore was not disabled within the meaning of the ADA. *Taylor*, 429 F.3d at 462-63. The inability to work more than eleven hours in this case similarly leaves a broad range of jobs available to Nance. Therefore, Nance's impairment does not qualify as a disability.

In his response, the Plaintiff points our that he receives Social Security disability benefits. Reading the pleadings of a *pro se* litigant liberally, I assume that Nance believes the Social Security Administration's finding of a disability must rebut the Defendant's argument that he is not disabled under the ADA. This assertion does not help the Plaintiff because there is more than one definition of "disability" under the United States Code, and the definition used for Social Security purposes is inconsistent with a claim for employment discrimination under the ADA. For Social Security purposes, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USCS § 423(d)(1)(A). Contrary to the Plaintiff's assertion, some have argued that satisfying the Social Security definition of "disability" raises a presumption against an ADA employment discrimination claim. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999). Although this argument was ultimately rejected by the Supreme Court, one can see an inconsistency between a person who satisfies the Social Security element of an "inability to engage in any substantial gainful activity" yet claims under the ADA to be an individual with a disability who "can perform the essential functions" of

7

their job. *Id*. I need not address the arguments raised in *Cleveland* because Nance's assertion of a disability under the Social Security definition still does not raise any genuine issue of fact regarding whether Nance's condition limits his major life activities.

   C.  *Plaintiff Is Not a Qualified Individual with a Disability*

  Not only does Nance's condition fall outside the ADA's definition of "disability," but he is also not a qualified individual with a disability under the ADA. The ADA defines an "qualified individual with a disability" as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 USCA § 12111(8). The Plaintiff has the burden of showing that he can perform the essential functions of his job with reasonable accommodation. *Tyndall*, 31 F.3d at 212. The Defendant points out that the Plaintiff has acknowledged that he cannot perform the essential functions of Quikrete's driving position. At deposition, the Plaintiff testified that it is essential for Quikrete's drivers to be able to work up to fourteen hours a day. The Plaintiff acknowledged that he became fatigued after ten to eleven hours of work per day, which prevented him from making certain deliveries for the Defendant. It is established law that an employee who can only work part time is not a "qualified individual with a disability" under the ADA if full time work is essential to the job. *Lamb v. Qualex, Inc*., 33 Fed. Appx. 49, 57 (4th Cir. 2002). Similarly, where fourteen hour work days are essential to the job, an employee who can only work up to eleven hours is not qualified.

  In response, Nance argues that when he notified Quikrete of his limitation, the Defendant told him that they would find some way for him to continue working after being notified of his condition, and they employed him despite his medical limitations for ten months. Interpreted

8

liberally, I believe that Nance is arguing that reasonable accommodations were promised and available. It remains unclear, however, whether this ten month period was an accommodation or whether Quikrete temporarily suspended an essential job function for his position. Either way, for a reasonable accommodation to be made, the employee would still have to be otherwise qualified to fulfill the essential functions of the job. The ADA does not require an employer "to restructure the essential functions of a position to fit the skills of an individual who is not otherwise qualified to perform the position." 29 C.F.R. Pt. 1630, App. § 1630.9 (1998). Exemption from an essential job function is not an ADA required accommodation. *Foremanye v. Board of Community College Trustees*, 956 F. Supp. 574, 578 (D. Md. 1996).

In *Foremayne*, an employee whose physical ailments allowed her to work only thirty hours per week, instead of the essential function of 37.5, was not entitled to a thirty hour work week as a reasonable accommodation. *Foremanye*, 956 F. Supp. at 578-79. Even though her employer had allowed the employee to miss more than her allotted number of sick days in an attempt to reach an accommodation, the court concluded that "[i]t would be unreasonable as a matter of law if the Court were to require that defendant accommodate this substantially reduced schedule." *Id*. at 579. Similarly, I cannot require Quikrete to accommodate a reduced schedule for this employee. By all accounts, the ability to work fourteen hours a day is an essential job function for this position. Quikrete's employment of Nance for ten months despite his inability to fulfill this essential job function may have been an attempt to find some reasonable accommodation which ultimately failed, just as Foremayne's employer temporarily exempted her from working the required number of hours for her job. Nance has not given any example of what accommodations Quikrete provided during this time or whether Quikrete provided

9

accommodation at all rather than just temporarily exempting him from the fourteen hour a day requirement. In lieu of an example of a reasonable accommodation, I find that summary judgment is appropriate because there is no genuine issue on whether the Plaintiff is qualified for the essential functions of the job.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment will be **GRANTED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record. The Clerk is further directed to strike this case from the active docket of this Court.

ENTERED this 5th day of June, 2007.

s/Jackson L. Kiser
Senior United States District Judge